LEMMON, Judge.
This case involves conflicting claims to a deposit on an aborted contract to buy and sell immovable property. The litigation originated as a concursus proceeding invoked by a real estate broker after both the buyer and seller claimed the deposit. The broker disclaimed any interest in the deposit (in the form of a promissory note) and sought to be relieved of liability by placing the note in the registry of court and imp-leading the two claimants. The issue on appeal is whether the buyer, Jay Ehara, proved that a condition nullifying the contract had been met.
On March 23, 1977 Ehara executed a written offer to purchase certain immovable property owned by Orleans Motors, Inc. for the sum of $186,500.00, the sale to be passed by June 30. Orleans accepted the offer on March 31.
The contract was a printed standard form to which Ehara added the following condition:

“ROOF & TERMITE CONDITIONS

“PROPERTY MUST BE INSPECTED FOR TERMITE AND/OR TERMITE DAMAGE AND/OR ROOF DAMAGE WITHIN 5 WORKING DAYS OF ACCEPTANCE OF THIS OFFER AT EXPENSE OF PURCHASER. IF TERMITE, TERMITE DAMAGE AND/OR ROOF DAMAGE IS DISCOVERED, ERADICATION AND/OR REPAIR SHALL BE DONE AND COMPLETED BY DATE OF ACT OF SALE AT SELLER’S EXPENSE. IF COST OF TERMITE ERADICATION, TERMITE DAMAGE AND/OR ROOF REPAIR EXCEEDS $500.00, PURCHASER HAS OPTION TO DECLARE THIS AGREEMENT NULL AND VOID.”
At the time Ehara executed the offer, there was obvious evidence of recent water *14 damage inside the building.[1] The contractual condition inserted by Ehara provided him not only with a commitment that the roof would be repaired and that any termites would be eradicated and termite damage corrected, but also with a right of withdrawing from his obligation if such damage proved to be substantial upon thorough inspection.
On April 5 at Ehara’s request a termite inspector examined the property and found no active termites in the building. He did find evidence of past infestation consisting of damage to one 4X8 sheet of wall paneling near the air conditioning equipment, and he estimated that the cost of replacement was $20.00.
Sometime after the inspection Ehara requested a contract price for preventive treatment, and the inspector submitted a price of $840.00. However, in answer to a question at trial by Ehara’s counsel, the inspector specifically stated that treatment was not warranted because of evidence of past infestation, but was a preventive measure to protect against any future infestation.
Ehara also had the roof inspected on April 5 by Hibernia Roofing, who reported that a damaged turbine vent needed to be replaced at a cost of $87.00.
On April 13 Ehara wrote a letter to the broker, exercising his option to nullify the sales contract on the basis of the reports by Hibernia Roofing and the termite inspector. Orleans rejected the contention that the cost of termite eradication, termite damage and roof repair exceeded $500.00, and Orleans’ attorney placed Ehara in default when he failed to take title prior to June 30,1977, further demanding forfeiture of the deposit.
After trial on the merits judgment was rendered in favor of Orleans, and Ehara appealed.
Ehara contends that the contract was null because the cost of termite eradication alone exceeded $800.00. The evidence clearly refutes this contention, since there were, in fact, no termites to eradicate. The contractual provision was intended to take care of existing problems, and any cost for preventive treatment would not be incurred to eradicate existing termites, but to prevent termite infestation in the future, the inspector’s testimony indicating that preventive treatment should be undertaken regardless of the age of the structure or of its history of past infestation. This record therefore does not establish the necessity of incurring any cost for termite eradication and at best establishes the cost of termite damage repair was $20.00.
Ehara further contends that the cost of roof repair exceeded $500.00. He bases this contention on his conversations with E. C. Rietschel, the roofer who actually performed the repairs for Orleans.
Orleans subpoenaed Rietschel, but he was excused from testifying when his physician advised against court appearance following a recent heart attack. Orleans’ president testified that Rietschel performed all the repair for $370.00, but admitted that Riet-schel had bid $450.00 and had reduced the bid in the prospect of additional work.
In order to be relieved of the obligation because of a contractual condition, Ehara had the burden of proving .that the condition had been met. He simply did not prove that the cost of roof repairs exceeded $500.00 (or even $450.00). Moreover, he has no valid basis for complaint because Riet-schel, whom he had not subpoenaed, did not testify for reasons of health.
The trial court properly ordered that the note be endorsed by the broker and that Orleans be entitled to possession of the note. The trial court also awarded 25% attorney’s fees, supposedly in accordance with the provisions of the note. However, the note provided that attorney’s fees were due when the note was overdue and placed in the hands of an attorney for collection. *15 Since Orleans’ claim was for ownership of the deposit (whether note or cash) which Ehara also claimed, not for collection of a note which Ehara failed to pay, attorney’s fees are not due at this time.
Accordingly, the judgment of the trial court is amended to delete the award of attorney’s fees. As amended, the judgment is affirmed.

AMENDED AND AFFIRMED.

. The interior damage caused by a roof leak was fully covered by insurance, and the damage was repaired shortly thereafter with funds provided by Orleans’ insurer. Only the roof defect (and not the interior rain damage) is pertinent to the considerations in this case.